UNITED STATES of America, Plaintiff,

v.

Manuel Antonio NORIEGA, Defendant.

Cable News Network, Inc., and Turner Broadcasting System, Inc.

No. 88–0079–Cr.

United States District Court,
S.D. Florida.

Dec. 6, 1990.

Norman A. Moscowitz, Sonia Escobio O'Donnell, Marcella Cohen, Asst. U.S. Attys., Miami, Fla., for U.S.

Frank A. Rubino, Coconut Grove, Fla., Jon May, Miami, Fla., Steven Kollin, Miami, Fla., for Noriega.

Terry S. Bienstock, Frates Beinstock & Sheehe, Miami, Fla., Daniel M. Waggoner, Stuart F. Pierson, Davis Wright Tremaine, Washington, D.C., Steven W. Korn, Turner Broadcasting System, Inc., Atlanta, Ga., for Cable News Network, Inc., and Turner Broadcasting System, Inc.

## ORDER

HOEVELER, District Judge.

THIS CAUSE is before the court on Defendant General Manuel Antonio Noriega's motion to enjoin Cable News Network, Inc. and its corporate parent, Turner Broadcasting System, Inc. (collectively "CNN") from broadcasting taped recordings of conversations between Noriega and his defense team.

In this case, the court is called upon to balance two preferred and equally cherished constitutional guarantees: the Sixth Amendment right of a defendant to a fair trial and the First Amendment right of the press to be free of prior restraints on publication.

### I.  BACKGROUND

#### A.

Defendant Manuel Noriega is currently detained at the Metropolitan Correctional Center ("MCC") located in Dade County, Florida. The subject of this action concerns telephone calls made by Noriega from MCC to his attorneys and other members of his defense team. The conversations were apparently recorded by MCC officials and obtained by CNN from an undisclosed source.

According to Noriega's motion, representatives from CNN appeared at the law office of Noriega's lead counsel, Frank Rubino, on November 6, 1990, and informed Rubino that CNN was in possession of seven tape recordings of telephone conversations that Noriega had while housed at MCC. CNN then played a portion of one of the tapes for Rubino, who identified the voices as those of Noriega, Rubino's secretary, and a legal assistant. According to the motion, the portion of the recording played contained discussions of trial strategy and investigation of the pending criminal charges against Noriega. The motion further states that CNN intended to air a

story about the government's wire tapping of Noriega's telephone on its 6:00 p.m. broadcast on November 8.

On November 7, Noriega filed his emergency motion for an injunction, seeking an order prohibiting CNN from broadcasting any tape recording of any privileged communication between himself and any of his lawyers or defense staff. Noriega specifically did not seek to prohibit CNN from reporting on the government's taping of his conversations, nor did he seek to enjoin the broadcast of his conversations with persons other than members of his defense team, but objected only to the playing of a "constitutionally protected communication between an attorney and his client." At 8:30 a.m. on November 8, the court convened an emergency hearing on the motion.

Although Noriega's motion for injunction was limited to privileged attorney-client conversations, it was also Noriega's position that he had not waived the privilege with respect to any of his conversations with his defense team. On the subject of waiver, the government stated that each inmate at MCC is given a handbook which explains that all of the inmate's conversations are subject to monitoring and tape-recording. The government also submitted in evidence a document, signed by Noriega, explaining that an inmate's telephone calls are monitored for security reasons and that the inmate acknowledges receipt of this information. Additionally, the government submitted in evidence a photograph of a sticker on the bottom of Noriega's telephone. According to the government, the language on the sticker, which is indecipherable from the photograph provided, states that calls on that particular phone are subject to monitoring. However, the government also stated that MCC's policy was not to monitor or record conversations which MCC knew to be private attorney-client communications. Moreover, the document or 'acknowledgement' signed by Noriega does not on its face evidence any waiver of the attorney-client privilege but rather supports the opposite conclusion that Noriega intended to preserve this confidentiality, as indicated by the following language: "Las llamadas a un abogado, hechas como los reglamentos indican, no seran monitorizadas." ("Calls to an attorney, made according to the rules, will not be monitored."). Further, defense counsel stated that it is apparent to Noriega's guards when Noriega is calling his attorney's office because the guard not only places the call but also hears defense counsel's secretary answer "law office" before handing Noriega the receiver. Defense counsel also stated that the associate warden at MCC assured him that maintaining attorney-client confidentiality would be "no problem" because, in maintaining a phone log, prison guards can determine whether Noriega is calling his attorneys as opposed to third parties.

Because a determination of whether the attorney-client privilege was waived as to any particular communication would have necessitated an extensive evidentiary hearing which would in turn have required a restraint on CNN's broadcast longer than the court was willing to impose, the court assumed for the purposes of the motion that Noriega had not waived the attorney-client privilege with respect to any conversation with any member of his defense team. This assumption under which the court proceeded was made clear to the parties both at hearing and in the court's subsequent orders.

At the conclusion of the 8:30 hearing on November 8, the court entered an oral order enjoining CNN from broadcasting any of Noriega's privileged attorney-client communications until 6:00 p.m. on that same day. The court subsequently entered a written memorandum order and supplemental order extending the injunction for ten (10) days or such lesser time as needed for the court to review the tapes in CNN's possession and make a determination on the merits, and ordering CNN to produce the tapes for the court's review. CNN refused to produce its tapes and appealed the court's orders to the Eleventh Circuit Court of Appeals, arguing that the orders imposed an unconstitutional prior restraint on publication. This court orally stayed the portion of its orders requiring production of the tapes pending the Eleventh Cir-

cuit's decision. On November 9 and 10, while CNN's appeal was still pending before the Eleventh Circuit, CNN repeatedly broadcast the attorney-client conversation identified by Rubino, and which CNN had refused to permit the court to review. As was indicated in Noriega's motion, the conversation in fact involved discussion of potential witnesses in the government's case against Noriega. On November 10, the Eleventh Circuit upheld the restraining orders entered by this court. CNN then filed an application to stay the restraining orders and a petition for writ of certiorari with the Supreme Court. This court then entered another order continuing its restraint on CNN's broadcast of Noriega's attorney-client conversations, and staying the portion of its orders requiring production of the tapes, until the Supreme Court's disposition and this court's opportunity to implement that disposition. On November 18th, the Supreme Court denied CNN's application to stay the restraining orders and petition for a writ of certiorari. Two days later, on November 20th, CNN produced the tapes for the court's review.

Because the recordings delivered to the court were contained on videotape rather than audio cassettes, special equipment had to be brought in before the official translator could begin the process of transcription and translation. The tapes were subsequently transcribed in Spanish and translated from Spanish to English, a process which took all of six days because of the technical problems involved. The English translation was then submitted to Magistrate William C. Turnoff on November 27th for review and report and recommendation to the court. On the same day he received the transcript, the magistrate prepared and submitted his report and recommendation. The following day, November 28th, this court, having reviewed the transcripts [1] and the magistrate's report, convened a hearing on the merits of Noriega's motion for an injunction.

Prior to the hearing, copies of the English transcript were made available to Noriega's counsel, attorneys for CNN, and a team of U.S. attorneys established for the purpose of facilitating government representation on all matters relating to CNN's tapes without involving members of the prosecution team. CNN had opposed allowing Noriega's counsel and. the government to review the transcripts. This objection was overruled by the court, which determined that Noriega and the government would need to know the exact contents of the conversations in order to meet the heavy burden of proving that publication would so damage Noriega's right to a fair trial that a prior restraint was justified. In addition, Noriega's counsel was permitted to meet with the magistrate in the presence of a court reporter, *in camera* and *ex parte*, prior to submission of the magistrate's report and recommendation, to convey the significance, if any, of any trial strategy discussed in any attorney-client conversation.

The court, anticipating that attorney-client conversations other than that already broadcast by CNN might contain discussions of Noriega's trial strategy and confidences, and foreseeing sequestration of the prosecution as an alternative to a prior restraint, instructed the prosecutors on November 21st to begin sequestration of the entire prosecution team. The prosecutors had already insulated themselves from exposure to CNN's broadcasts and any information pertaining to those broadcasts. The court, however, instructed the prosecutors to widen the scope of sequestration, to the extent that it had not already done so, to include all persons participating in the prosecution of Noriega, including but not limited to members of the Justice Department in Washington, D.C. who are in any way involved in this case, all investigators and persons handling documents, and the

---

1. The court's temporary restraining orders had directed that the tapes be submitted for the magistrate's review in response to defense counsel's concern that direct review by the court might require recusal from the underlying crim-inal case against Noriega. Defense counsel later withdrew this objection, and it was agreed by both defense counsel and CNN that this court should undertake direct review of the tape transcriptions.

government's witnesses.[2]

### B.

The restraining orders entered by this court, and the higher courts' refusals to overturn them, have attracted considerable attention as potential precedent in First Amendment law. Since it appears that the actions of this court may be given more significance than deserved in view of the procedural and factual setting which gave birth to these problems, it is appropriate here to put the issue in the context in which it came before the court.

As is reflected in its written orders, the court noted that, if the conversations which CNN intended to broadcast contained highly damaging or prejudicial information or important aspects of Noriega's preparation or trial strategy, their broadcast could impair Noriega's right to a fair trial by making it impossible to impanel an impartial jury and/or by revealing that trial strategy as well as protected confidences to the prosecution. The court recognized that prior restraints on publication are presumptively unconstitutional and that the Supreme Court has never upheld a lasting restraint on publication. At the same time, this court observed that the Supreme Court has refused to foreclose the possibility of a lawful restraint on publication and, in the context of the right to a fair trial, has adopted a test for determining whether a prior restraint is justified where that right is at risk. *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976). That test requires a factual inquiry as to whether publication would clearly impair the right to a fair trial, whether less restrictive alternatives would mitigate the prejudice so as to make prior restraint unnecessary, and whether a

prior restraint would effectively prevent the harm. *Id.* at 562–68, 96 S.Ct. at 2804–07. In order to make the factual findings mandated by *Nebraska Press*, it was necessary for the court to review the subject tapes. Yet because the contents of CNN's tapes were not before the court, the court was "being asked to make a factual determination without being allowed to review the facts." That CNN possessed and intended to broadcast at least one attorney-client communication involving discussions of witnesses and strategy was enough to alert the court to the possibility of prejudicial disclosure, but given the heavy presumption against prior restraints, the court was unwilling to impose a lasting restraint on publication until it could review this conversation as well as any other attorney-client conversation CNN intended to broadcast. Noting that CNN was in possession of the tapes and had resisted turning them over for review, the court remarked that it was

> fundamentally unfair to allow CNN to benefit from its refusal to disclose the contents of the tapes to the court—that is, to allow CNN to argue that no prior restraint should issue because no clear and immediate harm is apparent when the only reason that no clear and immediate harm yet appears is because CNN has so far prevented this court from reviewing the content of the tapes in its possession.

CNN's position contained an inherent contradiction: on the one hand it refused to produce the tapes so that the court could make the factual findings necessary to determine whether an injunction was justified, and at the same time it argued that the court could not enjoin publication without first making those findings.[3]

**2.** *Cf., United States v. North,* 910 F.2d 843 (D.C. Cir.1990) (vacating defendant's conviction on ground that district court did not sufficiently ensure that defendant's immunized testimony was not used by the prosecution and its witnesses, either directly or indirectly, at trial).

Because effective and complete sequestration of the prosecution and its witnesses can be expected to require at least a few days to put in place, this procedure was not a viable alternative to prior restraint when Noriega's motion

for injunction first came before the court, since CNN planned to broadcast Noriega's attorney-client conversations on that same day and objected to a restraint on its broadcasts of even several hours' duration.

**3.** Under the unusual facts of this case, CNN had, in effect, exclusive possession of the contents of the speech at issue. Upon CNN's insistence that the court look to the government for production of the tapes rather than CNN, the court ordered

■ As is set forth in *Nebraska Press* and the cases cited therein, and as recently reurged by the Eleventh Circuit, the district court is obligated to ensure that a defendant receives a fair trial. 427 U.S. at 551–55, 96 S.Ct. at 2799–2801; *U.S. v. Noriega*, 917 F.2d 1543 (11th Cir.1990) (per curiam). *See also United States v. Gurney*, 558 F.2d 1202, 1209–10 (5th Cir.1977), *cert. denied*, 435 U.S. 968, 98 S.Ct. 1606, 56 L.Ed.2d 59 (1978). Where disclosures by the press threaten to jeopardize this Sixth Amendment right, it is incumbent on the court to determine whether publication would clearly impair the right to a fair trial, while at the same time protecting the constitutional guarantees embodied in the First Amendment by looking to whether measures short of a prior restraint would minimize the harm. Keeping in mind that prior restraints are presumptively unconstitutional and are the measure of last resort, the court is nevertheless required to undertake this constitutional balancing. CNN's refusal to allow the court to review its tapes prevented the court from embarking on this fundamental obligation to both the defendant and the press. Thus, CNN's position could be sustained only if the court was prepared to rule that the content of CNN's tapes is irrelevant—that an injunction could not issue even if a review of CNN's tapes made it unmistakably clear that publication would make a fair trial for Noriega impossible. At bottom, then, CNN's position rested on an "absolutist" view that the First Amendment is superior to the Sixth Amendment, and that a prior restraint is therefore per se unconstitutional. The court declined to adopt this view and in doing so needed to look no further than the *Nebraska Press* decision, in which the Supreme Court refused to establish an absolute prohibition on prior restraints. As the Court there emphasized:

> The authors of the Bill of Rights did not undertake to assign priorities as between First Amendment and Sixth Amendment rights, ranking one as superior to the other. In this case, petitioners would have us declare the right of an accused subordinate to their right to publish in all circumstances. But if the authors of these guarantees, fully aware of the potential conflicts between them, were unwilling or unable to resolve the issue by assigning to one priority over the other, it is not for us to rewrite the Constitution by undertaking what they declined to do. It is unnecessary, after nearly two centuries, to establish a priority applicable in all circumstances.

> \*    \*    \*    \*    \*    \*

> However difficult it may be, we need not rule out the possibility of showing the kind of threat to fair trial rights that would possess the requisite degree of certainty to justify restraint. This Court has frequently denied that First Amendment rights are absolute and has consistently rejected the proposition that a prior restraint can never be employed.

427 U.S. at 561 & 570, 96 S.Ct. at 2803–04 & 2808 (citing *New York Times Co. v. United States*, 403 U.S. 713, 91 S.Ct. 2140,

---

the government to produce a log of all of Noriega's conversations tape recorded at MCC. After reviewing the log, the court determined that a review of all of what appeared to be attorney-client conversations recorded by the government would take at least one month. Nonetheless, the court expressed its willingness to review the government's tapes, rather than require production from CNN, provided that CNN refrain from broadcasting attorney-client conversations until the court could complete this lengthy task. In response, CNN refused to refrain from broadcasting its tapes of Noriega's attorney-client conversations pending the court's review of this alternative source of production which CNN had insisted the court look to.

Further, the court had previously noted that a review of MCC's tapes might be of limited value since it was possible that CNN was in possession of tapes that were not recorded at MCC and therefore not in MCC's possession, i.e., that perhaps some of the conversations in CNN's possession were monitored and recorded from a location outside MCC. CNN represented that the tapes in its possession contained conversations at MCC, but would not represent that they were MCC recordings or who provided the tapes to CNN.

The court's subsequent review of the tapes indicates that the conversations in CNN's possession were indeed recorded at MCC, as portions of the tapes contain the voice of an MCC guard identifying the conversations as monitored and recorded at MCC.

29 L.Ed.2d 822 (1971) (per curiam); *Organization for a Better Austin v. Keefe,* 402 U.S. 415, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971); and *Near v. Minnesota ex rel. Olson,* 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931)). Adoption of CNN's position would have required this court to disregard Supreme Court precedent and establish a new rule, emphatically rejected by that Court, that a prior restraint is per se unconstitutional. This, as indicated, is not the law. Led by the authority cited and the compelling logic which gave rise to such direction, this court, as well, declined to subordinate the precious liberties guaranteed by the Sixth Amendment to inferior constitutional status. As is evident in the Eleventh Circuit's incisive treatment of the subject, the First Amendment does not provide a license to the court to disregard the commands of the Sixth Amendment. *U.S. v. Noriega,* at 1547–51.

Can there be any logical or equitable justification for the position that the press protection clause permits (as the argument requires one to conclude) the most aggravated infringement of the rights of others (typically the least favored among us) and thus a collision with and subjugation of other parts of the Bill of Rights? And this, without any examination by a court to evaluate the danger of disclosure or, at least, the timing of it and the damage which may inhere to the equally precious rights of others? The statement of the proposition urges the answer.

Nonetheless, the importance of the First Amendment cannot be overemphasized. Yet those who are charged with its protection as well as those who enjoy that protection must realize that extreme positions, rather than securing and advancing the rights guaranteed by the First Amendment, can result in unwelcome limitations on those rights.

The court emphasizes again that its temporary restraint on the broadcast of Noriega's attorney-client conversations was not a determination on the merits—the court had *not* then concluded that Noriega's Sixth Amendment right to a fair trial outweighed CNN's First Amendment right to be free of prior restraints on publication, nor even that Noriega's right to a fair trial would be harmed by disclosure of his attorney-client conversations. Rather, the court's orders were entered for the very limited purpose of maintaining the status quo until the court could determine whether this was one of the narrow class of cases in which a prior restraint might be justified. The turn of events since review of the tape transcripts has rendered further development of some of these questions, at least, unnecessary.

## II. DISCUSSION

As indicated, Noriega did not object to publication of all of his recorded conversations, but only to those between his defense team and himself. The court, therefore, in reviewing the tapes, principally examined the extent to which Noriega's attorney-client conversations, if broadcast or published, could impinge on his right to a fair trial.

In examining Noriega's Sixth Amendment right to a fair trial, this court is actually addressing two separate and distinct rights of the defendant under that Amendment: the right to an impartial jury and the right to effective assistance of counsel. The separate and distinct operation of these two rights necessarily engenders two independent examinations of the attorney-client conversations at issue. Ensuring an impartial jury requires the court to explore the nature and extent of any possible prejudice of potential jurors which could result from publication of any part of the attorney-client conversations. As the Eleventh Circuit observed in its opinion affirming this court's restraining orders, the fact that conversations may or may not fall within the protections of the privilege has no bearing on whether Noriega's right to an impartial jury will be clearly and irreparably harmed by publication. *U.S. v. Noriega,* at 1549–50. Thus, even if it is later determined that Noriega's attorney-client conversations are not privileged, that finding would not disturb the conclusions reached herein as to jury prejudice. Guaranteeing Noriega's right to counsel involves an equally serious but much narrow-

er inquiry. There, the court is concerned only with the extent to which publication of legitimately privileged communications would prejudice Noriega's defense were those protected conversations to fall into the hands of the prosecution. The court will consider these two distinct rights in turn.

## A. RIGHT TO AN IMPARTIAL JURY

The following comments are, in light of the comprehensive opinion of the court of appeals in this matter, probably superfluous. However, because of the significance of the issues and the importance of relating the law to the facts of this case, the court will indulge in a modest further development of current law as it applies to this matter.

The Sixth Amendment guarantees that, in all criminal prosecutions, an accused is entitled to an "impartial jury" of her peers. The right to a fair and impartial jury is based on the fundamental recognition that, in the last analysis, it is the jury in whose hands a defendant's fate and liberty ultimately rest. It is beyond peradventure that a defendant's right to an impartial jury can be violated by adverse pretrial publicity. See *Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); *Rideau v. Louisiana*, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963); *Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). Thus, where prejudicial pretrial publicity threatens to undermine a fair trial, "trial courts must take strong measures to ensure that the balance is never weighed against the accused." *Sheppard v. Maxwell*, 384 U.S. at 362, 86 S.Ct. at 1522. The right to a fair trial, so basic to our scheme of constitutionally ordered liberties that it has been deemed "the most fundamental of all freedoms," *Estes v. Texas*, 381 U.S. 532, 540, 85 S.Ct. 1628, 1631–32, 14 L.Ed.2d 543 (1965), can never be compromised. With that obligation in mind, the court must direct its attention to the other constitutional amendment, the invocation of which by CNN gives rise to the consideration of this important problem.

■ If the Sixth Amendment can be said to enjoy special consideration and protection, the First Amendment's guarantee of free press and free speech is no less revered. And of all the infringements on First Amendment rights, prior restraints on speech and publication "are the most serious and least tolerable ..." *Nebraska Press*, 427 U.S. at 559, 96 S.Ct. at 2803. A prior restraint is therefore presumptively unconstitutional, with the movant bearing the "heavy burden of showing justification for the imposition of such a restraint." *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 419, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971).

■ In *Nebraska Press*, the Supreme Court established the demanding test that must be met before a prior restraint on pretrial publicity is justified. That test requires proof that: (1) the nature and extent of pretrial publicity will impair the defendant's right to a fair trial; (2) there are no less restrictive alternatives which would mitigate the effects of the prejudicial publicity; and (3) a prior restraint would effectively prevent the harm. 427 U.S. at 562–68, 96 S.Ct. at 2804–07. *See also In the Matter of Providence Journal Co.*, 820 F.2d 1342, 1349 (1st Cir.1986) (summarizing the *Nebraska Press* test), *modified*, 820 F.2d 1354 (1st Cir.1987) (en banc), *cert. dismissed*, 485 U.S. 693, 108 S.Ct. 1502, 99 L.Ed.2d 785 (1988). Only if it is clear from this analysis that "further publicity, unchecked, would so distort the views of potential jurors that 12 could not be found who would, under proper instructions, fulfill their sworn duty to render a just verdict exclusively on the evidence presented in open court," can a prior restraint issue. *Nebraska Press*, 427 U.S. at 569, 96 S.Ct. at 2807–08. Moreover, the court's conclusions cannot be speculative, but must be founded on the high degree of certainty required before a prior restraint is permissible. *Id.* at 563 & 569, 96 S.Ct. at 2804–05 & 2807–08.

■ The first prong of the *Nebraska Press* test requires consideration of the nature and extent of pretrial publicity as well as the degree to which the particular pub-

licity sought to be restrained poses a danger to fair trial rights. The possibility of jury prejudice has been ever present in this case as a result of the extensive negative publicity generated by the capture of a foreign ruler and his being brought to trial on drug charges in the United States. The events of the past few weeks surrounding the tapes of General Noriega's conversations have engendered interest well beyond the Southern District of Florida. Any broadcast of them will be assured an interested national audience and an even more curious local audience, furthering the risk of prejudicing potential jurors. But the extent of publicity is only one factor to be considered. More important is the prejudicial nature of the publicity sought to be suppressed, since the extent of dissemination is harmful only insofar as the speech disseminated is itself of a harmful character.

The review of CNN's tapes by the magistrate and this court revealed only two conversations falling within the attorney client ambit. One of these conversations has already been broadcast in large part by CNN and, as to that portion previously disclosed on CNN's newscasts, the issue is moot. An injunction on further broadcasts of conversations already disseminated to a wide audience would fail the third prong of the test in *Nebraska Press*, the harm having already been done. The portion of this conversation not broadcast reveals little beyond the fact that Noriega's lawyers have a photograph of a potential government witness whose identity was disclosed in the CNN broadcast, as well as few other insignificant details about the witness.[4] A second attorney-client conversation, no portion of which has been broadcast to date, is so cryptic and disjointed that neither the magistrate nor the court could construct an adequate description of its nature or content. Noriega's counsel concedes that both

the portion of the first conversation not previously disclosed and the entire second conversation cannot arguably be said to be prejudicial as far as the impaneling of an impartial jury is concerned. The court, in its independent analysis,[5] must agree. The material contained in the attorney-client conversations can hardly be said to be of the type which would permit an adverse reaction on the part of potential jurors (except perhaps by the recognition that Noriega often speaks in apparent code) much less possess the inflammatory and pervasive impact that would render it impossible to find twelve impartial jurors. Certainly nothing contained in the attorney-client conversations, nor indeed in any of the other conversations in the tapes reviewed, even approaches the prejudicial nature of the publicity which attended Noriega's apprehension by American military forces in Panama.

Moreover, the court has at its disposal a wide range of alternatives short of prior restraint which would mitigate the impact of prejudicial publicity. Change of venue, continuance of the case, careful voir dire, and emphatic instructions to the jury to consider only the evidence before it are all measures which, individually and combined, diminish the threat of pretrial publicity. None of these measures can be deemed ineffective, nor even necessary at this point, on the basis of the showing made to date.

In sum, it is the court's conclusion (independently joined in by defense counsel) that Defendant Noriega cannot meet his heavy burden of proving that publication of the attorney-client conversations before the court would so clearly and irreparably undermine his right to an impartial jury that the "least tolerable" infringement of First Amendment rights must be tolerated.

---

4. Because the court has concluded that the prosecution should not be privy to Noriega's attorney-client conversations, regardless of whether they are prejudicial, until a determination on the issue of waiver is reached, the court is limited here in its discussion of the contents under review. *See supra,* note 6.

5. The concession by Noriega's counsel that the conversations reflected in the tapes do not present a fair trial problem does not obviate the need for independent analysis of this question by the court. As the Eleventh Circuit noted, it is the district court's, and not the defendant's, obligation to ensure a fair trial. *U.S. v. Noriega,* at 1550–51.

## B. EFFECTIVE ASSISTANCE OF COUNSEL

As discussed earlier, the attorney-client disclosures consist solely of 1) an acknowledgment that the defense team possesses a photograph of a government witness and 2) a cryptic, unintelligible conversation between Noriega and a defense team investigator. The court, upon its own independent examination and in light of the magistrate's comparable conclusion after meeting *in camera* with defense counsel, can neither find nor infer any prejudice that would enure to Noriega were these disclosures to reach the prosecution. Though some degree of prejudice to Noriega's case may somehow result from publication, the nature and extent of that prejudice at this juncture in time is nothing more than speculation. If nothing else, *Nebraska Press* stands for the proposition that speculative harm falls well short of the showing necessary for the imposition of a prior restraint. 427 U.S. at 569, 96 S.Ct. at 2807–08.

Even if Noriega were able to meet his burden of establishing demonstrable prejudice upon the prosecution's gaining access to these conversations, the court would in all likelihood refrain from imposing a prior restraint on the press. Less drastic alternatives exist for preventing prosecutorial taint—namely, sequestration such as that which has already been imposed.[6] Moreover, any taint that might come to the prosecution despite sequestration of attorneys, agents, and witnesses could be weeded out at trial by way of dismissing members of the prosecution team or excluding evidence and witnesses. By such methods must a trial judge reconcile the competing interests between the press's First Amendment right and the right of the defendant to a fair trial.

If, at some point, it is determined that Noriega waived his privilege as to the particular conversations now before the court, the prosecution, of course, would have every right to examine them. That determination will have to wait another day, as the court finds that the immediacy of CNN's free press interest outweighs the immediacy of the prosecution's interest in obtaining the disclosed information.

## III. CONCLUSION

As there is now no objection to the publishing of the tapes and as the court has independently determined that there is no factual basis for entering a permanent stay order or continuing the one imposed, it is the order of this court (entered orally at approximately 9:30 a.m. on November 28th) that the stay be lifted and that the tapes be returned to CNN forthwith.[7]

DONE and ORDERED.

---

**6.** Since the prosecution has not been privy to the conversation already broadcast by CNN, in which potential government witnesses are discussed, it is the court's view that sequestration of the prosecution should continue, at least until a determination on the issue of waiver is reached.

**7.** Returned on November 28, 1990 immediately following hearing.