968 So.2d 608 (2007)
POST-NEWSWEEK STATIONS ORLANDO, INC., d/b/a WKMG, Appellant,
v.
Douglas M. GUETZLOE, Appellee.
Nos. 5D07-430, 5D07-526.
District Court of Appeal of Florida, Fifth District.
October 4, 2007.
Rehearing Denied November 19, 2007.
Monterey Campbell, Jack A. Kirschenbaum and Maureen A. Vitucci of Gray Robinson, P.A., Melbourne, for Appellant.
Harry C. Greenfield of Harry C. Greenfield, P.A., Merritt Island, for Amici Curiae *609 The Radio-Television News Directors Assoc., The Reporters Committee for Freedom of the Press and The Society of Professional Journalists.
Kathleen A. Kirby and Sam Q. Le of Wiley Rein LLP, Washington, D.C., for Amici Curiae The Radio-Television News Directors Assoc.
Bruce W. Sanford, Bruce D. Brown and Laurie A. Babinski of Baker & Hostetler LLP, Washington, D.C., for Amici Curiae The Society of Professional Journalists.
Lucy A. Dalglish and Gregg P. Leslie, Arlington, VA, for Amici Curiae The Reporters Committee for Freedom of the Press.
Sanford L. Bohrer, Judith M. Mercier, Charles D. Tobin and David C. Borucke of Holland & Knight LLP, Orlando, for Amici Curiae The Florida Association of Broadcasters, Orlando Sentinel, South Florida Sun-Sentinel, WBZL-TV, Tribune Company, Inc., WESH-TV, Hearst-Argyle Television, Inc., WOFL FOX 35, WOGX FOX 51, WRBW 65, WTVT FOX 13, WPTV-TV, WFTS-TV, The Naples Daily News, Treasure Coast Newspapers, The E.W. Scripps Co., The Daytona Beach News-Journal, News-Journal Corp., The Lakeland Ledger, The Sarasota Herald-Tribune, The Ocala Star-Banner, The Gainesville Sun, The New York Times Co., Florida Today, The News-Press, Pensacola News Journal, Tallahassee Democrat, WTSP-TV, WTLV-TV, WJXX-TV, Gannett Co., Inc., The Associated Press, The Washington Post, Cable News Network, Inc., The Florida Press Assoc., and The First Amendment Foundation in Support of Defendant/Appellant WKMG.
Frederic B. O'Neal, Windermere, for Appellee.
TORPY, J.
Appellant, a television station broadcaster, challenges a temporary injunction that prohibits it from broadcasting the contents of documents obtained from a storage unit leased by Appellee. Appellant's challenge is based on its argument that the injunction constitutes an unconstitutional prior restraint on free speech. After de novo review, we determine that Appellee failed to meet his heavy burden to justify imposition of the injunction. Therefore, we reverse the injunction order.
Appellant came into possession of eighty boxes of Appellee's records after they were sold at auction by the owner of a storage facility due to Appellee's alleged failure to pay rent. An unknown third party purchased the records. Appellant acquired the documents from the third party. Thereafter, Appellant contacted Appellee to inform him that it intended to publish portions of the contents of the records in its telecast. Appellee sought to prevent the public airing of his personal information by filing a two-count complaint seeking declaratory and injunctive relief and replevin. He also filed a verified motion for temporary injunction without notice. In the motion, Appellee alleged that the records remained his private property, despite Appellant's claim of ownership, because the storage facility's determination that he had failed to pay was erroneous. The motion further alleged that some of the boxes of records included medical records of Appellee and his family, and communications between Appellee and his attorneys. The lower court granted the motion, ex parte, and temporarily enjoined Appellant from publicly airing the information.
After receiving notice of its issuance, Appellant filed a motion to dissolve the temporary injunction, contending that it was overbroad and an unconstitutional prior *610 restraint on its right to broadcast news based on lawfully obtained information. Appellant also contended that the injunction had been improperly entered without notice and failed to meet all the requirements of Florida Rule of Civil Procedure 1.610.
A hearing was held on Appellant's dissolution motion; no evidence was introduced by either party. The parties did stipulate, however, that Appellee is a "public figure" as that phrase is used in First Amendment jurisprudence. Beyond that, the factual underpinning for the court's order was based entirely on Appellee's verified motion. At the close of the hearing, the court took the matter under advisement. The following day, the court notified counsel of its intention to enter a detailed order in the case modifying the injunction, in part, but otherwise denying the motion to dissolve it. Before the written order was entered, Appellant filed a notice of appeal, in which it challenged the original temporary injunction and the oral ruling denying the motion to dissolve the temporary injunction. (Case number 07-430). The court then entered a written order denying Appellant's motion to dissolve the temporary injunction but modifying the injunction. As modified, the injunction prohibits only the publication of the contents of medical records of Appellee and his family and communications between Appellee and his attorneys. Appellant filed a second notice of appeal challenging the written order. (Case number 07-526). We consolidated the two appeals.
Although Appellant raises several arguments, we need only address one  whether the injunction imposes an unconstitutional prior restraint on the press in violation of the First Amendment. We disagree with the parties' and amici curiae's assertion that our standard of review is whether the lower court abused its discretion. The evidence upon which the lower court based its ruling was in the form of a verified motion and a stipulated fact. The trial judge's ruling was expressly based entirely on the application of the law to these undisputed facts; thus, our review is de novo. Smith v. Coalition to Reduce Class Size, 827 So.2d 959 (Fla.2002).[1]
Appellee properly concedes that the injunction at issue here operated as a prior restraint on the First Amendment rights of Appellant and is therefore presumed unconstitutional. See Alexander v. United States, 509 U.S. 544, 550, 113 S.Ct. 2766, 125 L.Ed.2d 441 (1993) (describing temporary and permanent injunctions that forbid speech activities as "classic examples of prior restraints"). This presumption exists because "[p]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." Neb. Press Ass'n v. Stuart, 427 U.S. 539, 559, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976). Although the prohibition against prior restraints is by no means absolute, the censorship of publication has been considered acceptable only in "exceptional cases." Near v. Minnesota, 283 U.S. 697, 716, 51 S.Ct. 625, 75 L.Ed. 1357 (1931). As our high court has emphasized:
The presumption against prior restraints is heavier  and the degree of protection broader  than that against limits on expression imposed by criminal penalties. Behind the distinction is a theory deeply etched in our law: a free society prefers to punish the few who abuse rights of speech after they break *611 the law than to throttle them and all others beforehand.
Se. Promotions, Ltd. v. Conrad, 420 U.S. 546, 558-59, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975). To overcome this presumption of unconstitutionality, the proponent of the injunction bears a "heavy burden." Neb. Press Ass'n, 427 U.S. at 559, 96 S.Ct. 2791.
Although the Supreme Court has never articulated a clear test that we can apply to determine when this "heavy burden" has been met, the Court has demonstrated the weight of this burden by consistently holding that the prohibition against such restraints attaches even when substantial competing interests are at stake. See, e.g., Butterworth v. Smith, 494 U.S. 624, 110 S.Ct. 1376, 108 L.Ed.2d 572 (1990) (invalidating criminal statute to extent it prohibited witness from disclosing content of witness's grand jury testimony); Landmark Commc'ns, Inc. v. Virginia, 435 U.S. 829, 98 S.Ct. 1535, 56 L.Ed.2d 1 (1978) (invalidating state's criminal statute prohibiting publication of information regarding judicial review commission proceedings); Neb. Press Ass'n, 427 U.S. 539, 96 S.Ct. 2791 (invalidating, as improper prior restraint, pretrial gag order prohibiting publication of defendant's confession in highly publicized murder trial, despite state's competing interest in protecting defendant's right to fair trial); New York Times Co. v. United States, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971) (prohibiting injunction, as improper prior restraint, against publication of stolen, classified government documents). Indeed, in over two centuries, the Supreme Court has never sustained a prior restraint involving pure speech, such as the one at issue here. See Matter of Providence Journal Co., 820 F.2d 1342, 1348 (1st Cir.1986).[2]
Here, Appellee asserts that his privacy interest in his private papers, and in particular his medical information and attorney-client communications, is sufficient to sustain his burden. Although Appellee does not direct our attention to any Supreme Court case that has ever upheld a prior restraint to protect a competing privacy interest, the possibility that privacy rights might justify such a restraint has not been completely foreclosed by the Court. For example, in a leading case, although stating that a prior restraint may be justified only in "exceptional cases," such as maintaining the secrecy of troop movements in wartime, the Court emphasized that its holding did not address the "authority to prevent publications to protect private rights according to principles . . . of equity." Near, 283 U.S. at 716, 51 S.Ct. 625. See also The Florida Star v. B.J.F., 491 U.S. 524, 541, 109 S.Ct. 2603, 105 L.Ed.2d 443 (1989) (declining to conclude that "there is no zone of personal privacy within which the State may protect the individual from intrusion by the press . . . ").
Notwithstanding any suggestion by the Court that privacy rights might trump the First Amendment in a given circumstance, time after time, when the high court has been called upon to consider whether the free exercise of speech under the First Amendment may be curtailed to protect privacy rights, it has not been hesitant in *612 resolving the ostensible conflict in favor of the exercise of free speech. The Court has done so by prohibiting both prior restraints and the constitutionally less-intrusive, post-publication imposition of criminal and civil liability. See, e.g., Bartnicki v. Vopper, 532 U.S. 514, 121 S.Ct. 1753, 149 L.Ed.2d 787 (2001) (holding, based on First Amendment protections, although government interest in protecting private conversation is strong, publication of contents of illegally obtained tape recording on matter of public interest cannot give rise to damage claim); The Florida Star, 491 U.S. 524, 109 S.Ct. 2603 (holding that state statute prohibiting media from publishing name of rape victim was unconstitutional because not narrowly tailored to address state interest of "highest order"); Smith v. Daily Mail Publ'g Co., 443 U.S. 97, 99 S.Ct. 2667, 61 L.Ed.2d 399 (1979) (holding state statute, which prohibited publication of names of juvenile offenders and under which two newspapers were indicted, unconstitutional); Okla. Publ'g Co. v. Okla. County Dist. Court, 430 U.S. 308, 97 S.Ct. 1045, 51 L.Ed.2d 355 (1977) (holding as unconstitutional pretrial order enjoining media from publishing name or photograph of eleven-year-old boy in connection with juvenile proceeding); Cox Broad. Corp. v. Cohn, 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975) (holding as unconstitutional civil damage award against television station for publishing name of rape-murder victim); Org. for a Better Austin v. Keefe, 402 U.S. 415, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971) (holding injunction against private pamphleteering not valid even assuming it constitutes an invasion of privacy).
Although these precedents are somewhat instructive because they suggest that privacy will rarely trump the First Amendment, all of these cases are distinguishable from the situation that we are confronted with here. In this case, Appellee seeks to enjoin the publication of documents that, based on the nature of the documents, are of no obvious public concern. We particularly observe that in most instances, an individual's medical records would not be of public interest. We do not think that Appellee's status as a public figure means that every aspect of his private life is of public concern. See Nixon v. Admin'r of Gen. Servs., 433 U.S. 425, 457, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977) (suggesting that even public officials are "not wholly without constitutionally protected privacy rights in matters of personal life unrelated to any acts done by them in their public capacity"). But even if Appellee's documents are of public concern due to his status, it is difficult to envision how the medical records of his family could be a concern to the public.
The abstract issue framed by the parties in this case, therefore, involves the extent to which privacy interests in information, which is of no apparent public concern, may be asserted as a basis for limiting the First Amendment's prohibition against censored expression by a publisher who comes into possession of the information without resort to improper means. Appellant urges that the answer is never; it contends that the sole remedy for an alleged invasion of privacy under these circumstances is an action for damages. Otherwise, Appellant argues that the determination of whether a fact is of public concern is taken away from editors and placed with the courts, amounting to prohibited censorship. Appellee's position is not as rigid. He contends that a prior restraint based on privacy grounds may be justified when privacy rights outweigh the First Amendment's protections. He urges that the balancing of these interests, as was done by the lower court here, is the appropriate approach. We find it unnecessary to sanction either position to *613 resolve this case because, even under Appellee's approach, we determine that the injunction is not justified as Appellee has failed to establish that the contents of the records at issue are sufficiently sensitive to give rise to an actionable invasion of privacy should the documents be published. Therefore, even if we were to balance the respective rights of the parties, Appellant would prevail.
To reach this conclusion, we need only examine Wolfson v. Lewis, 924 F.Supp. 1413 (E.D.Pa.1996), the case upon which Appellee places his heaviest reliance. There, the court entered an injunction to prohibit broadcast journalists from engaging in certain conduct in connection with an Inside Edition exposé on the high salaries being paid to the executives of U.S. Healthcare. The court predicated the injunction on a finding that the plaintiff had established a likelihood that he would succeed on his claims for unlawful interception of oral communications and invasion of privacy under Pennsylvania and Florida state law. On the invasion of privacy claim, the court found that the plaintiff had proven the "highly offensive to a reasonable person" element of the tort. These statutory and tort law violations, said the court, were sufficient to overcome the defendants' First Amendment arguments. Even assuming that Wolfson is a correct analysis of the interplay between the First Amendment and privacy interests protected by state law, we cannot conclude that Appellee has shown that he is likely to prevail because he has not proven that Appellant's anticipated conduct would constitute a tort or actionable violation of state law.[3]
To sustain his burden here, it cannot be gainsaid that Appellee must establish that his privacy interest is at least one that is recognized and protected by state law. See The Florida Star, 491 U.S. at 530-33, 109 S.Ct. 2603 (recognizing tension is between First Amendment and statutory and common law doctrines protecting privacy; First Amendment yields only to state interest of the "highest order"). Accord People v. Bryant, 94 P.3d 624, 636 (Colo.2004).[4] Unlike the situation in Wolfson, here, Appellee has failed to establish that an actionable invasion of privacy is likely to occur because there is no proof that the publication of his records would be "highly offensive to a reasonable person." Cape Publ'ns, Inc. v. Hitchner, 549 So.2d 1374, 1377-78 (Fla.1989) (stating that to prove tort of invasion of privacy by publication of private facts, publication must be "highly offensive to reasonable person"). Although we can certainly conceive of hypothetical situations when publication of sensitive medical records or attorney-client communications might meet this element, we cannot conclude that the publication of any such records will necessarily meet this threshold merely because of their nature. Speculation cannot suffice to rebut the heavy presumption against a prior restraint. Se. Promotions, 420 U.S. at 561, 95 S.Ct. 1239; New York Times Co., 403 U.S. at 725-26, 91 S.Ct. 2140 (Brennan, J., concurring) ("[T]he First Amendment tolerates absolutely no prior judicial restraints of the press predicated *614 upon surmise or conjecture that untoward consequences may result.").[5]
Taking our cue from the Supreme Court, we emphasize that our holding today is limited. The heavy burden rested with Appellee throughout these proceedings. City of Ormond Beach v. City of Daytona Beach, 794 So.2d 660, 662 (Fla. 5th DCA 2001). We hold simply that the burden was not met here.[6]
REVERSED.
ORFINGER and EVANDER, JJ., concur.
NOTES
[1] For this reason, we reject Appellee's threshold argument that Appellant's failure to provide a transcript of the hearing precludes any challenge to the injunction. Hoelzle v. Shapiro, 736 So.2d 1207 (Fla. 1st DCA 1999).
[2] We have not overlooked Appellee's argument that this is not a pure speech case, but instead a conduct case. This argument seems to contradict Appellee's concession that the prior restraint analysis is appropriate here. See Madsen v. Women's Health Ctr., Inc., 512 U.S. 753, 764, 114 S.Ct. 2516, 129 L.Ed.2d 593 (1994) (finding that injunction prohibiting conduct not subject to prior restraint analysis). Nevertheless, we reject Appellee's attempt to characterize this case as anything other than a pure speech case. The injunction prohibits the publication of information already in the possession of Appellant. As such, it operates to restrain pure speech, not conduct, as Appellee urges.
[3] Appellant dismisses Wolfson as a conduct case. We agree that the injunction pertained solely to conduct. Therefore, the Wolfson court's prior restraint analysis was unnecessary to its conclusion. By citation to Wolfson, we do not suggest that we would endorse its analysis and conclusion in a pure speech case such as this.
[4] Although not central to our holding, we reject Appellee's claim that his privacy interest is grounded in either the state or federal constitutions, which pertain only to governmental intrusions into private affairs.
[5] Although the trial judge cited the statutory attorney-client privilege and the federal Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936 (1996) ("HIPAA") in his order, Appellee does not specifically argue these issues on appeal and they would not justify the injunction in any event. The attorney-client privilege is an evidentiary privilege, which does not prohibit the publication at issue here. We are not dealing with a situation wherein Appellee claims that the disclosure might jeopardize his right to a fair trial in a criminal proceeding. See, e.g., United States v. Noriega, 752 F.Supp. 1045 (S.D.Fla.1990) (noting injunction against publication of protected communications might be appropriate to protect accused right to fair trial in criminal prosecution); State-Record Co., Inc. v. State, 332 S.C. 346, 504 S.E.2d 592 (1998) (upholding prior restraint to protect fundamental right to fair trial). As to the HIPAA laws, they do not protect against the disclosure of medical records in the circumstances presented here.

We have not overlooked the issue of ownership of the documents. Based on the state of the record, we assume for the sake of argument, that the storage company did not have legal authority to auction the documents. We further assume that Appellee has made a colorable claim to ownership of the records. Appellee has not shown that Appellant engaged in unlawful conduct to obtain possession of the records, however, and an ownership interest in the records, standing alone, would not justify an injunction against publication. New York Times Co., 403 U.S. 713, 91 S.Ct. 2140.
[6] We are not unmindful of the practical dilemma faced by Appellee and his counsel. Because Appellant had the records in its possession, the burden of proof was made more difficult, especially given the urgency of the proceedings. We note that Appellee made no attempt to seek in camera inspection of the documents or offer secondary evidence of the contents of the records. Nevertheless, the burden to justify this extraordinary relief was on Appellee and did not shift to Appellant merely because it possessed the documents.