958 So.2d 1115 (2007)
SEA QUEST INTERNATIONAL, INC., Appellant/Cross-Appellee,
v.
TRIDENT SHIPWORKS, INC., Appellee/Cross-Appellant.
No. 2D05-5950.
District Court of Appeal of Florida, Second District.
June 22, 2007.
*1116 Stephen A. Marino, Jr., and Cristina M. Lopez of Ver Ploeg & Lumpkin, P.A., Miami, for Appellant/Cross-Appellee.
Jonathan W. Skipp and Stephanie H. Wylie of Horr, Novak & Skipp, P.A., Miami, for Appellee/Cross-Appellant.
DAVIS, Judge.
Sea Quest International, Inc. ("Sea Quest"), challenges the final judgment entered against Trident Shipworks, Inc. ("Trident"), alleging that the trial court erred in determining the amount of damages to be awarded Sea Quest. By cross-appeal, Trident also challenges the damages determination. We affirm in part and reverse in part.
Sea Quest and Trident entered into a written agreement for the construction of a 117-foot luxury yacht. Trident agreed to complete construction of the yacht by September 7, 1998. Not only did Trident fail to meet the contract date, but Sea Quest was dissatisfied with the quality of the construction that Trident had performed. Pursuant to the agreement, Sea Quest sought arbitration to settle the contract dispute. Trident responded by seeking protection through a Chapter 11 proceeding in the bankruptcy court. At all times material to these proceedings, St. Paul Fire and Marine Insurance Company ("St. Paul") provided Trident with insurance coverage. Specifically, St. Paul had issued Trident a total of four policiestwo builder's risk policies, one general liability policy, and one umbrella liability policy.
Sea Quest filed its claim in the bankruptcy proceeding alleging that Trident owed Sea Quest $9.43 million for its violation of the construction agreement. Trident filed an objection to Sea Quest's claim. During the proceedings, the bankruptcy court issued an order authorizing Sea Quest to file an independent action naming Trident as a "nominal" defendant, thus allowing Sea Quest to pursue its claim against St. Paul for the damages covered *1117 by Trident's insurance policies. After the trustee in bankruptcy formulated an acceptable plan for distribution of Trident's assets, Trident withdrew its objection to Sea Quest's claim and the trustee made a pro rata distribution to Sea Quest of $258,473.57, or 2.74% of its claim. The distribution and discharge plan was confirmed on May 22, 2000, and no appeal was taken.
Prior to the bankruptcy court's approval of the discharge plan, St. Paul filed a declaratory judgment action in the United States District Court for the Middle District of Florida. The action named both Sea Quest and Trident as defendants and asked for a determination of the potential coverage issues raised by the four insurance policies. The complaint also asked the district court to determine the appropriate amount of damages if it found coverage to exist.
St. Paul then moved for a summary judgment on the issue of coverage, arguing that since Sea Quest had not obtained a judgment against Trident, a determination of coverage under the terms of the liability policies was premature. The district court agreed and, on October 19, 2001, granted summary judgment in favor of St. Paul on coverage issues related to the general liability policy and the umbrella policy. However, the district court determined that Sea Quest could proceed on the builder's risk policies as it was an additional named insured on those policies.
Pursuant to that determination, a nonjury trial was then held on the issues of coverage and damages under the two builder's risk policies. At issue was whether the policies covered Trident's poor workmanship or only covered damages that resulted from "fortuitous" events. St. Paul argued that all of the damages that Sea Quest claimed were outside of the scope of the policies' coverage. Accordingly, St. Paul offered no evidence to rebut the costs claimed by Sea Quest and "did not otherwise dispute the amount of loss. Rather, St. Paul limited its dispute to whether the losses sustained were `covered' losses under the policy." St. Paul Fire & Marine Ins. Co. v. Sea Quest Int'l, Inc., No. 8:00-CV-571-T-MSS, slip op. at 21 (M.D.Fla. Mar. 21, 2002). However, Sea Quest did present evidence in the form of two expert witnesses who testified to the damages Sea Quest had incurred as a result of Trident's failure to timely and properly construct the yacht as contemplated by the construction agreement.
At the conclusion of the hearing, the district court found that certain of the damages claimed by Sea Quest were covered by the builder's risk policies and others were not. Specifically, the court found that Sea Quest was entitled to $1,262,436.22 due to Trident's negligence and that this amount was covered by the policy. Id., slip op. at 13. The district court also found that the damages Sea Quest claimed for Trident's intentional misconduct were covered by the two policies and that the damage amount was $739,509. Id. However, the district court found that the damages claimed for Trident's failure to complete the construction were not recoverable under the builder's risk policies. Id., slip op. at 14. Likewise, the district court denied other damages as either being excluded from coverage under the two policies or lacking in sufficient proof.
St. Paul appealed the district court's order finding coverage under the two builder's risk policies, and Sea Quest cross-appealed the ruling that no coverage determination could be made under the two liability policies until Sea Quest obtained a judgment against Trident. While the Eleventh Circuit affirmed the district *1118 court's ruling that the coverage determination under the general liability and umbrella liability policies was premature, the court reversed the district court's order finding coverage under the builder's risk policies. See St. Paul Fire & Marine v. Sea Quest, 66 Fed.Appx. 844 (11th Cir. 2003) (unpublished table decision). Thus the Eleventh Circuit concluded that the builder's risk policies provided no coverage for Sea Quest's damages and that at least until liability was determined between Sea Quest and Trident, the liability policies provided no coverage either.
Following entry of the district court's order but prior to the Eleventh Circuit's decision, Sea Quest, in accord with the bankruptcy court's specific authorization, filed a two-count complaint against Trident in the Thirteenth Judicial Circuit in and for Hillsborough County.[1] The purpose of this action was to obtain a judgment against Trident so that it could proceed against St. Paul on the liability policies. Count one alleged damages based on negligence, and count two alleged breach of contract. The prosecution of the action was initially limited until the Eleventh Circuit entered its decision reversing the district court's order. Subsequently, upon the motion of Trident, the trial court dismissed the negligence count of the complaint, leaving only the breach of contract count.
Sea Quest then moved for summary judgment on the breach of contract count, arguing that liability and damages for the breach of contract claim already had been determined by another court and that further litigation of these issues was therefore barred by law. Specifically, Sea Quest pointed to its claim in the bankruptcy proceeding for $9.43 million, arguing that because Trident had withdrawn its objection to that claim and the pro rata distribution had been made based on that amount, the liability and damages issues already had been adjudicated by the bankruptcy court. In the alternative, Sea Quest argued that the United States District Court for the Middle District of Florida had determined Trident's liability and Sea Quest's damages at the nonjury trial. Sea Quest maintained that the district court's findings on liability and damages under the builder's risk policies were binding even though the Eleventh Circuit reversed the district court's finding that coverage existed under those policies.
The trial court rejected Sea Quest's argument regarding the bankruptcy proceedings but did agree that the liability and damages findings entered in the nonjury district court trial were binding. Accordingly, the trial court entered judgment against Trident for $2,423,775.22.[2] It is this judgment that both Sea Quest and Trident challenge.
Sea Quest's initial argument on appeal is that the trial court erred in refusing to adopt its $9.43 million claim in the bankruptcy proceeding as the amount determined to be Sea Quest's damages. Sea Quest argues that the principles of res judicata, equitable estoppel, and waiver required the trial court to grant summary judgment against Trident as to this *1119 amount. The trial court was correct to reject this argument.[3]
Because Sea Quest's argument that the bankruptcy proceeding adjudicated the liability of Trident on the breach of contract claim and the damages that Sea Quest incurred because of that breach, the federal rules of preclusion must be applied. See Baxas Howell Mobley, Inc. v. BP Oil Co., 630 So.2d 207 (Fla.3d DCA 1993). Although parties and state courts frequently use the terms res judicata and collateral estoppel, the federal courts more frequently refer to these as claim preclusion and issue preclusion. In re Kmart Corp., 362 B.R. 361 (Bankr.N.D.Ill.2007); see also S.E.L. Maduro (Fla.), Inc. v. M/V Antonio de Gastaneta, 833 F.2d 1477 (11th Cir.1987).
The rationale of the doctrine of claim preclusion (res judicata) is that there must be an end to litigation. Matter of Kroner, 953 F.2d 317 (7th Cir.1992). This doctrine may be applied to a bankruptcy court decision. Katchen v. Landy, 382 U.S. 323, 334, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966). If a party can show identity of the parties, identity of the causes of action, and the existence of a final judgment in the initial proceedings, this principle precludes relitigation of the same cause of action. People Who Care v. Rockford Bd. of Educ., 68 F.3d 172 (7th Cir.1995). The fact that the earlier action was concluded based on a consent judgment does not prevent the prior judgment from precluding the subsequent litigation. Martino v. McDonald's Sys., Inc., 598 F.2d 1079 (7th Cir.1979).
In the instant case, we conclude that Sea Quest failed to demonstrate an identity of parties in Trident's bankruptcy proceeding and the case sub judice. Thus the trial court did not err in refusing to find that the bankruptcy discharge precluded litigation of the breach of contract claim and the damages issue. See Athridge v. Aetna Cas. & Sur. Co., 351 F.3d 1166, 1171 (D.C.Cir.2003) ("[A] party invoking claim preclusion has the burden of establishing its elements. . . . ").
Although there is technically an identity of the named parties in both proceedings, those parties do not share an identity of interests in the two actions. Trident filed for bankruptcy protection, and Sea Quest filed its claim in the bankruptcy based on Trident's alleged breach of contract. However, Trident's trustee had no motivation to defend on the breach of contract claim or to rebut the claim for damages because Trident was going to be discharged of its debts. By contrast, St. Paul, which did have a reason to defend the claim because it insured Trident, was not a party to that proceeding, nor was its interest in defending the claim represented. When, as a result of the bankruptcy decree, Trident was discharged from the debt arising out of the contractual relationship, St. Paul was not relieved of its obligation. In fact, the bankruptcy judge authorized a separate action outside of the bankruptcy proceeding to allow Sea Quest the opportunity to seek relief from St. *1120 Paul. By this order, it was clear that the bankruptcy judge did not intend for St. Paul to be a party to the bankruptcy proceeding. Moreover, by authorizing Sea Quest to name Trident as a "nominal" defendant, the bankruptcy judge made it clear that St. Paul was to be the real party in interest in the subsequent action.
In the case sub judice, which is the action that was contemplated by the bankruptcy judge, Trident is the named defendant and St. Paul is defending the case under a reservation of rights.[4] St. Paul is the real party in interest because Trident, having received a discharge in bankruptcy, has no interest in the outcome. Thus, despite the apparent identity of parties in the two cases, the parties' differing interests in the two cases demonstrate the fallacy of allowing the bankruptcy decree to have a preclusive effect in the instant action. Accordingly, we conclude that because Sea Quest failed to demonstrate identity of the parties in the two actions, the bankruptcy decree does not preclude litigation of Trident's liability under the breach of contract claim or the damages for the breach, if proven.
Our conclusion is further supported by our review of the procedural history of this case. For claim preclusion to entitle Sea Quest to a summary judgment based on the bankruptcy decree, it would have to be accepted that the plan confirmation and discharge entered by the bankruptcy court on May 22, 2000, was an adjudication on the merits of the breach of contract claim and an award of $9.43 million in damages. However, the district court determined that Sea Quest did not have such a judgment against Trident when it found that Sea Quest was barred from proceeding against St. Paul on the general liability policy and the umbrella liability policy until such a judgment was obtained; this ruling was affirmed on appeal. The record is not clear whether Sea Quest argued in the federal courts that the bankruptcy was such a final judgment or whether Sea Quest waived the argument. However, because the law of this case as decided by the prior federal court decisions is that the bankruptcy decree was not a final judgment on the breach of contract claim, the trial judge below was correct in denying the motion for summary judgment based on this ground.
Sea Quest argues next that its filing of the $9.43 million claim in the bankruptcy proceeding, coupled with Trident's withdrawal of its objection to the claim, resulted in a type of consent judgment, which collaterally estopped Trident from denying its validity. Collateral estoppel, known as issue preclusion in the federal courts, is another means to limit litigation. This doctrine precludes relitigation of a particular issue that has been adjudicated previously. See Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). "While res judicata forecloses all claims which might have been litigated in the prior lawsuit, collateral estoppel assigns a preclusive effect only to those issues actually and necessarily decided in the prior lawsuit." S.E.L. Maduro (Fla.), Inc., 833 F.2d at 1483. Issue *1121 preclusion applies when the party advancing the doctrine can show that (1) the issue in question is the same issue involved in the prior litigation; (2) the issue was actually litigated; (3) the determination of the issue was essential to the final judgment rendered in the prior action; and (4) the party against whom the doctrine is applied was fully represented in the prior action. In re Kmart Corp., 362 B.R. at 383. Addressing the offensive use of issue preclusion in Parklane Hosiery, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552, the United States Supreme Court noted that the use of this doctrine by a plaintiff,[5] as here, may result in an unfair application and that the trial court should be granted "broad discretion to determine when it should be applied." Id. at 331, 99 S.Ct. 645. "[W]here . . . the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel." Id.
Our analysis of the record suggests that the trial court was also correct to deny Sea Quest's request for the application of issue preclusion based on the bankruptcy decision. Although Sea Quest filed a $9.43 million claim and Trident withdrew its objection to that claim, the issue of damages was never litigated. The record suggests that with the exception of its initial objection to the claim for damages, Trident did not in any way litigate the damages issue in the bankruptcy court. In fact, Trident's trustee had no incentive to expend the limited assets of the bankrupt's estate to defend on the issue of damages when a distribution plan was available that would obtain a discharge for Trident by the pro rata payment to Sea Quest, minimal though it was. To conclude that the issue was actually litigated in the bankruptcy proceeding and thus hold the insurer responsible for the total damages claim would be, as the Parklane court cautioned, "unfair" to St. Paul. See 439 U.S. at 331, 99 S.Ct. 645.
Additionally, the bankruptcy decree was, at best, in the nature of a consent judgment. That is, although Trident initially objected to Sea Quest's claim for $9.43 million, it withdrew the objection for the purposes of effectuating the distribution plan and obtaining the discharge. Our record fails to reveal a clear intent in the bankruptcy proceedings that the decree was to operate as an adjudication of the issue. The party seeking to invoke the preclusion doctrine based on a consent judgment must show that such was the intent of the parties. In re Halpern, 810 F.2d 1061, 1064 (11th Cir.1987) ("[T]he central inquiry in determining the preclusive effect of a consent judgment is the intention of the parties as manifested in the judgment or other evidence.").
Even if we were only to conclude that the record is not clear as to whether there was actual litigation of the damages issue, the trial court correctly denied the application of the preclusion doctrine because doubts as to the applicability of the doctrine should be resolved against the use of the doctrine. See In re Kmart Corp., 362 B.R. at 378. Accordingly, we conclude that the trial court did not err in rejecting Sea Quest's argument. That is, even if the trial court below were to find that Trident was liable on the breach of contract claim based on the district court's final judgment, the trial court was correct to reject *1122 Sea Quest's argument that Trident was precluded from litigating the damages issues because of the bankruptcy distribution plan and discharge.
In further support of this conclusion, we note that Sea Quest failed to demonstrate that the party against whom the doctrine is applied was fully represented in the prior action. As explained in our analysis of claim preclusion above, Trident did not attempt to defend on the damages claim in the bankruptcy proceeding. Not only was the issue not actually litigated, St. Paul's interests were not protected in the prior action and that prior bankruptcy ruling should not preclude Trident (St. Paul) from litigating the damages issue.
Sea Quest also suggests that Trident (St. Paul) should be precluded from litigating the issue of damages because Trident waived the opportunity to litigate the issue of damages by its actions in the bankruptcy proceedings.[6] As previously noted, however, all the parties acknowledge that the real party in interest in this action is St. Paul, not Trident, given the bankruptcy court's discharge, which precluded any further action against Trident, the bankrupt party. The bankruptcy order made it clear that the interests of the real party in interest, St. Paul, were not before the bankruptcy court and that St. Paul did not have the opportunity to litigate the damages issue at that time in the bankruptcy proceeding. Accordingly, we conclude that the trial court was correct in denying Sea Quest's motion on this ground as St. Paul had not had the previous opportunity to litigate this issue and cannot be said to have waived something it never had. In summary, we conclude that the trial court was correct to deny Sea Quest's request for a summary judgment against Trident based on the bankruptcy decree.
In its second point on appeal, Sea Quest alleges that the trial court below erred in its determination of the amount of damages. Sea Quest argues that even if the bankruptcy decree did not preclude further litigation on the liability and damages issues, the district court's judgment did. Sea Quest argues that at the trial on the builder's risk policies in the district court, Sea Quest produced evidence proving in excess of $10 million in damages. The district court's second amended order on plaintiff's amended motion for summary judgment and final judgment in favor of plaintiff awarded Sea Quest damages totaling $2,423,775.22, plus prejudgment interest from September 27, 1999.[7] Sea Quest argues that while the damage award included in the district court's final judgment was limited to the amount found to be covered by the builder's risk policies, additional damages were proven at the trial in the district court even though the district court determined that the additional amounts were not covered by the policies. That is, damages were proven that exceeded the amount awarded. Since the case sub judice involves a claim for breach of contractnot just a claim on the builder's risk policies Sea Quest argues that once the trial court determined Trident's liability for breach of contract, it was precluded from allowing further litigation on the damages issue and should have awarded all the damages proven in the federal proceeding, not just the amount awarded as covered damages.
*1123 We begin our analysis on this issue by noting that the trial court below did make the finding that "the issues of Trident's liability to Sea Quest and the amount of damages owed by Trident to Sea Quest were previously decided by Judge Mary Scriven in St. Paul Fire & Marine Ins. Co. v. Sea Quest Int'l, Inc. and Trident Shipworks, Inc., M.D. Fla. Case No. 8:00-cv-571-T-MSS."[8] Further, the trial court's order determined that the recovery of damages would be limited to the insurance proceeds available to Trident in accordance with the order entered by the bankruptcy court. However, we reject Sea Quest's argument that the trial court was bound by the district court's bench order and should have included damages that may have been proven at the federal trial but not awarded.
Because Sea Quest is relying on the doctrine of claim and/or issue preclusion based on the judgment entered by the district court, we must again look to the federal law on preclusion to determine the applicability of either claim or issue preclusion to these facts. See Baxas Howell Mobley, 630 So.2d 207. Prior to entry of the final judgment below, the Eleventh Circuit reversed in part and affirmed in part the district court's final judgment. See St. Paul Fire & Marine, 66 Fed.Appx. 844. The Eleventh Circuit affirmed the district court's ruling that the claims on the general liability policy and the umbrella liability policy were premature since there was no judgment against Trident for breach of contract and no determination of damages for such a claim. However, the Eleventh Circuit reversed the district court's determination that there was coverage under the builder's risk policies and the district court's award of damages. Id.
Trident argues on appeal that the reversal of the district court's final judgment negated the preclusive impact of that judgment. We agree. Because the district court's judgment finding liability, damages, and coverage under the builder's risk policies was reversed, the judgment lost its preclusive impact. See Franklin Sav. Ass'n v. Office of Thrift Supervision, 35 F.3d 1466, 1469 (10th Cir.1994) (holding that the prior determination of standing had no preclusive effect because the final judgment entered subsequent to that finding was reversed on appellate review); see also Erebia v. Chrysler Plastic Prods. Corp., 891 F.2d 1212, 1215 (6th Cir.1989) ("Where the prior judgment, or any part thereof, relied upon by a subsequent court has been reversed, the defense of collateral estoppel evaporates."); Ornellas v. Oakley, 618 F.2d 1351, 1356 (9th Cir.1980) ("A reversed or dismissed judgment cannot serve as the basis for a disposition on the ground of res judicata or collateral estoppel."). We note that Trident has not cross-appealed the trial court's finding of liability or the award of the limited damages made by the trial court below. However, it did argue that the Eleventh Circuit's reversal of the district court negated the preclusive effect of the judgment as to the issue of additional damages. We agree. Accordingly, we reject Sea Quest's argument that the doctrine of issue preclusion forecloses additional litigation of the damages presented to the district court but found by that court not to be covered by the builder's risk policies.
Trident did cross-appeal the inclusion of certain damages in the trial court's award. Specifically, the trial court's judgment included an award of $421,830 for damages for Trident's failure to complete the construction *1124 of the yacht. This total represented several specific claims for damages enumerated in the district court's bench order. Trident specifically objected to the sums described in the bench order as item number 94, which related to Sea Quest's addition of a keel to the vessel for stability, and item number 95, which also involved a subsequent modification. The total of these items was $300,000.
Based on the inapplicability of the doctrine of issue preclusion as discussed above, the trial court below erred in awarding these damages. However, we also agree with Trident's argument that even if the district court's judgment did preclude further litigation on the damages issue, these amounts were improperly awarded because the bench order included a specific finding that "there was insufficient evidence adduced at trial to establish that items 94 and 95 were caused by negligence on the part of Trident or that they were contemplated by the underlying construction agreement between Sea Quest and Trident." Accordingly, the portion of the final judgment awarding damages associated with items 94 and 95 of the district court's bench order is reversed, and on remand, the trial court is instructed to reduce the award of damages by $300,000.
In summary, the trial court's final judgment is affirmed with the exception that the award of damages shall be reduced by the sum of $300,000.
Affirmed in part, reversed in part, and remanded with instructions.
NORTHCUTT and SALCINES, JJ., Concur.
NOTES
[1] Although Trident is named as the defendant, it is clear that the party in interest is St. Paul. Trident was discharged of this debt by the bankruptcy proceedings; however, the potential relief that Sea Quest may recover would be from St. Paul under the general liability and umbrella liability policies.
[2] This amount represented the damages the district court found to be covered by the builders risk policies for Trident's negligent construction, Trident's intentional misconduct, and some of the costs Sea Quest incurred due to Trident's failure to complete the construction.
[3] Although the trial court did not specifically enter an order rejecting the arguments regarding the bankruptcy decree, it is clear from the record that is, in fact, what happened. Sea Quest presented alternative theories in support of its motion for summary judgment. The second theory suggested a different amount of damages and was argued at the hearings on the motion for summary judgment. The summary judgment that was entered awarded the lesser amount and specifically referred to the district court's decision. Additionally, Sea Quest designated this as a separate point of appeal, indicating that the parties understood by the trial court's judgment that it had rejected these arguments.
[4] Some time after Sea Quest filed this action against Trident, St. Paul filed a second petition seeking declaratory relief on the issue of coverage under the liability policies in the United States District Court for the Middle District of Florida. The district court granted Sea Quest's motion to stay those proceedings until the case before this court is finalized. In the district court's order, the court observed: "Thus, St. Paul's successful argument in the First Declaratory Action is one of the reasons it is now defending Trident under a reservation of rights in state court." St. Paul Fire & Marine Ins. Co. v. Sea Quest Int'l, 2006 WL 889994, *2 (M.D.Fla. Mar. 31, 2006).
[5] Normally, preclusion is argued by a defendant to prevent a plaintiff from further litigation on a claim or issue raised in a subsequent action. However, the doctrine can be used as an offensive strategy where a plaintiff files the cause of action and moves the trial court to preclude the defendant from relitigating the claim or issue. Either way, preclusion is normally raised as a ground for summary judgment.
[6] In its pleadings in the trial court and in this court, Sea Quest proposed application of the waiver theory; however, most of the argument made in the trial court and on appeal centered on the issue of claim preclusion.
[7] This total represents $1,262,436.22 for Trident's negligent construction, $739,509 for Trident's intentional misconduct, and $421,830 for Trident's failure to complete the yacht.
[8] Trident has not appealed the trial court's determination that the federal court previously determined Trident's liability for breach of contract and only challenges the award of damages for Trident's failure to complete the yacht by its cross-appeal.