BLACK, Judge.
Terry Bollea sought to enjoin Gawker Media, LLC, from publishing and otherwise distributing the written report about his extramarital affair that includes video excerpts from the sexual encounter. The-circuit court granted Mr. Bollea’s motion for temporary injunction, though it did not articulate the reasons for doing so. On appeal, Gawker Media challenges the circuit court’s order, asserting that Mr. Bol-lea is collaterally estopped from seeking the same relief previously sought and decisively denied in federal court, and should the doctrine of collateral estoppel be inapplicable, that such relief is an unconstitutional prior restraint.- Because the temporary injunction is an unconstitutional prior restraint under the First Amendment, we reverse.
I. Background
In 2006, Mr. Bollea engaged in extramarital sexual relations with a woman in her home. Allegedly without Mr. Bollea’s consent or knowledge, the sexual encounter was videotaped. On or about October 4, 2012, Gawker Media posted a written report about the extramarital affair on its website, including excerpts of the videotaped sexual encounter (“Sex Tape”). Mr. Bollea maintains that he never consented to the Sex Tape’s release or publication. Gawker Media maintains that it was not responsible for creating the Sex Tape and that it received a copy of the Sex Tape from an anonymous source for no compensation.
On October 15, 2012, Mr. Bollea initiated an action in federal court by filing a multi-count complaint against Gawker Media and others, asserting claims for invasion of privacy, publication of private facts, violation of the right of publicity, and infliction of emotional distress. See Bollea v. Gawker Media, LLC, No. 8:12-cv-02348-T-27TBM, 2012 WL 5509624, at *2 (M.D.Fla. Nov. 14, 2012) (Bollea I). Additionally, on October 16, 2012, Mr. Bollea filed a motion for preliminary injunction, seeking to enjoin the named defendants from publishing any portion of or any content from the Sex Tape. Following a hearing, the federal court issued an order on November 14, 2012, denying the motion for preliminary injunction. See id. at *3-5. The court found that the requested preliminary injunction would be an unconstitutional prior restraint under the First Amendment and that notwithstanding the First Amendment issue, Mr. Bollea otherwise failed to demonstrate that he was entitled to a preliminary injunction under the applicable injunction standard. Id. at *3-4.
*1199 On December 28, 2012, Mr. Bollea voluntarily dismissed the federal action. That same day, Mr. Bollea filed an amended complaint in state circuit court, asserting essentially the same claims that he asserted in federal court. Thereafter and as he did in federal court, Mr. Bollea filed a motion for temporary injunction seeking to enjoin Gawker Media and others not participating in this appeal[1] from publishing and otherwise distributing the video excerpts from the sexual encounter and complementary written report. Following a hearing, the circuit court issued an order on April 25, 2012, granting the motion for temporary injunction. The court did not make any findings at the hearing or in its written order to support its decision.[2] On May 15, 2018, this court stayed the order granting the motion for temporary injunction pending the resolution of this appeal.
II. Applicable Standards
“The primary purpose of a temporary injunction is to preserve the status quo while the merits of the underlying dispute are litigated.” Manatee Cnty. v. 1187 Upper James of Fla., LLC, 104 So.3d 1118, 1121 (Fla. 2d DCA 2012). In the context of the media, “the status quo ... is to publish news promptly that editors decide to publish. A restraining order disturbs the status quo and impinges on the exercise of editorial discretion.” In re Providence Journal Co., 820 F.2d 1342, 1351 (1st Cir.1986), modified on other grounds on reh’g by 820 F.2d 1354 (1st Cir.), cert. dismissed, United States v. Providence Journal Co., 485 U.S. 693, 108 S.Ct. 1502, 99 L.Ed.2d 785 (1988). A temporary injunction is an “extraordinary remedy” that should be granted “sparingly and only after the moving party has alleged and proved facts entitling [him] to relief.” Liberty Fin. Mortg. Corp. v. Clampitt, 667 So.2d 880, 881 (Fla. 2d DCA 1996) (citations omitted).
A temporary injunction aimed at speech, as it is here, “is a classic example of prior restraint on speech triggering First Amendment concerns,” Vrasic v. Leibel, 106 So.3d 485, 486 (Fla. 4th DCA 2013), and as such, it is prohibited in all but the most exceptional cases, Near v. Minn. ex rel. Olson, 283 U.S. 697, 716, 51 S.Ct. 625, 75 L.Ed. 1357 (1931). Since “prior restraints on speech and publication are the most serious and least tolerable infringement on First Amendment rights,” the moving party bears the “heavy burden” of establishing that there are no less extreme measures available to “mitigate the effects of the unrestrained ... publication]” and that the restraint will in *1200 deed effectively accomplish its purpose. Neb. Press Ass’n v. Stuart, 427 U.S. 539, 558-59, 562, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976). Furthermore, “[w]here ... a direct prior restraint is imposed upon the reporting of news by the media, each passing day may constitute a separate and cognizable infringement of the First Amendment.” Neb. Press Ass’n v. Stuart, 423 U.S. 1327, 1329 (Blackmun, Circuit Justice, 1975).[3]
We generally review orders granting temporary injunctions for an abuse of discretion. Forrest v. Citi Residential Lending, Inc., 73 So.3d 269, 275 (Fla. 2d DCA 2011). However, “[w]e apply a de novo standard of review to the determination of whether a temporary injunction constitutes an unconstitutional prior restraint on free speech.” Id. (citation omitted). And though an injunction order generally comes to this court clothed with a presumption of correctness, orders restraining “protected speech must be considered presumptively invalid” and will only be permitted if there are no less restrictive means available. Romero v. Erik G. Abrahamson, P.A., 113 So.3d 870, 872 (Fla. 2d DCA 2012); accord N.Y. Times Co. v. United States, 403 U.S. 713, 714, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971).
III. First Amendment
It is not clear from the hearing transcript, and certainly not from the order, why the circuit court granted the motion for temporary injunction. Based upon the few interjections the court made during the hearing, it appears that the court believed Mr. Bollea’s right to privacy was insurmountable and that publishing the content at issue was otherwise impermissible because it was founded upon illegal actions.
A. Privacy
“[W]here matters of purely private significance are at issue, First Amendment protections are often less rigorous.” Snyder v. Phelps, — U.S. -, -, 131 S.Ct. 1207, 1215, 179 L.Ed.2d 172 (2011) (citing Hustler Magazine, Inc. v. Falwell, 485 U.S. 46, 56, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988)). On the other hand, “ ‘[sjpeeeh on “matters of public concern” ... is “at the heart of the First Amendment’s protection.” ’ ” Id. (quoting Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc., 472 U.S. 749, 758-59, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985) (plurality opinion)).
Speech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public. The arguably inappropriate or controversial character of a statement is irrelevant to the question whether it deals with a matter of public concern.
Id. at 1216 (citations omitted) (internal quotation marks omitted).
Mr. Bollea, better known by his ring name Hulk Hogan, enjoyed the spotlight as a professional wrestler, and he and his family were depicted in a reality television show detailing their personal lives. Mr. Bollea openly discussed an affair he had while married to Linda Bollea in his published autobiography[4] and otherwise discussed his family, marriage, and sex life *1201 through various media outlets. Further, prior to the publication at issue in this appeal, there were numerous reports by various media outlets regarding the existence and dissemination of the Sex Tape, some including still shots therefrom. Despite Mr. Bollea’s public persona, we do not suggest that every aspect of his private life is a subject of public concern. See generally Post-Newsweek Stations Orlando, Inc. v. Guetzloe, 968 So.2d 608, 612 (Fla. 5th DCA 2007) (noting that appellant’s status as a public figure does not mean that every aspect of his private life is of public concern but nonetheless holding that enjoining the broadcaster from publicly airing appellant’s personal records and those of his family operated as an unconstitutional prior restraint under the First Amendment). However, the mere fact that the publication contains arguably inappropriate and otherwise sexually explicit content does not remove it from the realm of legitimate public interest. See Snyder, 131 S.Ct. at 1217; see also Fla. Star v. B.J.F., 491 U.S. 524, 525, 109 S.Ct. 2603, 105 L.Ed.2d 443 (1989) (holding that a news article about a rape was a matter of public concern and that the newspaper was not liable for the publication of the victim’s identity obtained from a police report released by law enforcement in violation of a Florida statute); Cape Publ’ns, Inc. v. Hitchner, 549 So.2d 1374, 1377 (Fla.1989) (holding that confidential information regarding a child abuse trial was a matter of legitimate public concern and that thus the newspaper’s publication of such did not violate privacy interests). It is clear that as a result of the public controversy surrounding the affair and the Sex Tape, exacerbated in part by Mr. Bollea himself,[5] the report and the related video excerpts address matters of public concern. See Bartnicki v. Vopper, 532 U.S. 514, 534, 121 S.Ct. 1753, 149 L.Ed.2d 787 (2001) (“[Privacy concerns give way when balanced against the interest in publishing matters of public importance.... One of the costs associated with participation in public affairs is an attendant loss of privacy.”); Michaels v. Internet Entm’t Grp., Inc., No. CV 98-0583 DDP (CWx), 1998 WL 882848, at *10 (C.D.Cal. Sept. 11, 1998) (Michaels II) (“[T]he private facts depicted in the [publication] ha[d] a substantial nexus to a matter of legitimate public interest,” namely, a dispute over the dissemination of the sex tape, and the depiction of the sexual relations was “clearly part of the story.”); see also Jones v. Turner, No. 94 Civ. 8603(PKL), 1995 WL 106111, at *21 (S.D.N.Y. Feb. 7, 1995) (holding that the preliminary injunction was unjustifiable where nude pictures were related to the accompanying article and the article itself was a matter of public concern). But see City of San Diego, Cal. v. Roe, 543 U.S. 77, 84, 125 S.Ct. 521, 160 L.Ed.2d 410 (2004) (holding that the sexually explicit acts of *1202 the government employee, depicted in a video, did not address a matter of public concern where the acts “did nothing to inform the public about any aspect of the [employing agency’s] functioning or operation”); Toffoloni v. LFP Publ’g Grp., LLC, 572 F.3d 1201, 1213 (11th Cir.2009) (holding that the publication of nude photographs of a female professional wrestler taken twenty years prior was not protected speech because their publication was not related to the content of the reporting, namely, her murder).
In support of his contention that the report and video excerpts do not qualify as matters of public concern, Mr. Bollea relies on Michaels v. Internet Entertainment Group, Inc., 5 F.Supp.2d 823 (C.D.Cal.1998) (Michaels I), in which the court enjoined the commercial distribution of an entire sex tape that infringed the plaintiffs’ copyrights. However, the court in Mi-chaels I found the use of the sex tape to be purely commercial in nature. Specifically, the copyrighted tape was sold via the internet to paying subscribers, and the internet company displayed short segments of the tape as a means of advertisement to increase the number of subscriptions. Id. at 835. In contrast, Gawker Media has not attempted to sell the Sex Tape or any of the material creating the instant controversy, for that matter.[6] Rather, Gawker Media reported on Mr. Bollea’s extramarital affair and complementary thereto posted excerpts from the video.
The court in Michaels I pointed out that although “[t]he plaintiffs are entitled to an injunction against uses of their names or likenesses to sell the [sex tape,] [t]he injunction may not reach the use of their names or likenesses to report or comment on matters of public interest.” Id. at 838. In accord with this conclusion, the court held in the companion case that the publication of a news report and brief excerpts of the sex tape was not an invasion of privacy and was protected speech. Michaels II, 1998 WL 882848, at *7, *10 (distinguishing the dissemination of an entire sex tape with the use of excerpts from the tape); see also Bollea v. Gawker Media, LLC, 913 F.Supp.2d 1325, 1331 n. 6 (M.D.Fla.2012) (Bollea II) (“[Gawker Media] did not simply post the entire [Sex Tape] — or substantial portions thereof, but rather posted a carefully edited excerpt consisting of less than two minutes of the thirty[-]minute video of which less than ten seconds depicted explicit sexual activity.”). Here, the written report and video excerpts are linked to a matter of public concern — Mr. Bollea’s extramarital affair and the video evidence of such — as there was ongoing public discussion about the affair and the Sex Tape, including by Mr. Bollea himself. Therefore, Mr. Bollea failed to meet the heavy burden to overcome the presumption that the temporary injunction is invalid as an unconstitutional prior restraint under the First Amendment. As such, it was within Gawker Media’s editorial discretion to publish the written report and video excerpts. See Providence Journal, 820 F.2d at 1351; see also Doe v. Sarasota-Bradenton Fla. Television Co., 436 So.2d 328, 331 (Fla. 2d DCA 1983) (noting that it is the primary function of the publisher to determine what is newsworthy and that the court should generally not substitute its judgment for that of the publisher).
B. Unlawful Interception
It appears that the circuit court may have been convinced by Mr. *1203 Bollea’s argument that the speech at issue is not entitled to First Amendment protection because the Sex Tape was created in violation of the law.[7] However, there is no dispute that Gawker Media was not responsible for the creation of the Sex Tape. Nor has Mr. Bollea alleged that Gawker Media otherwise obtained it unlawfully. The Supreme Court in Bartnieki held that if a publisher lawfully obtains the information in question, the speech is protected by the First Amendment provided it is a matter of public concern, even if the source recorded it unlawfully. Bartnicki, 532 U.S. at 535, 121 S.Ct. 1753; see also CBS Inc. v. Davis, 510 U.S. 1315, 1318, 114 S.Ct. 912 (Blackmun, Circuit Justice, 1994) (“Nor is the prior restraint doctrine inapplicable because the videotape was obtained through the ‘calculated misdeeds’ of CBS.”); N.Y. Times Co. v. United States, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971) (holding that notwithstanding the fact that a third party had stolen the information, the press had a constitutional right to publish the Pentagon Papers because they were of public concern). As the speech in question here is indeed a matter of legitimate public concern, the holding in Bartnieki applies.[8] As such, the temporary injunction acts as an unconstitutional prior restraint on Gawker Media’s protected speech.
IV. Collateral Estoppel
Gawker Media asserts that the circuit court’s order granting Mr. Bollea’s motion for temporary injunction is barred by the doctrine of collateral estoppel because the same issue was decisively adjudicated in the Middle District of Florida on Mr. Bollea’s motion for preliminary injunction. Collateral estoppel, referred to as issue preclusion in the federal courts, is a judicial doctrine that prevents relitigation of an issue that has been previously adjudicated. Sea Quest Int'l, Inc. v. Trident Shipworks, Inc., 958 So.2d 1115, 1120 (Fla. 2d DCA 2007). Since the pertinent prior decision was issued by the federal court, the federal rules of preclusion apply. See id. at 1119. Thus, this court must follow the “analysis the federal courts would apply with respect to issue preclusion,” the effect of which is to “assume hypothetically” that Mr. Bollea refiled his motion in federal court. See Amador v. Fla. Bd. of Regents ex rel. Fla. Int’l Univ., 830 So.2d 120, 122 (Fla. 3d DCA 2002).
Whether or not collateral estoppel applies depends on whether the federal court’s order denying Mr. Bollea’s motion for a preliminary injunction constitutes judicial finality. See Christo v. Padgett, 223 F.3d 1324, 1339 (11th Cir.2000) (“It is widely recognized that the finality requirement is less stringent for issue preclusion than for claim preclusion.”); see also Miller Brewing Co. v. Jos. Schlitz Brewing Co., 605 F.2d 990, 995 (7th Cir.1979) (stating that an interlocutory decision “will be given preclusive effect if it is necessarily based upon a determination that constitutes an insuperable obstacle to the plaintiffs success on the merits”). “ ‘[F]or purposes of issue preclusion ..., “final judgment” includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect.’ ” Christo, 223 F.3d at 1339 n. 47 (quoting Restatement (Sec *1204 ond) Judgments § 13 (1980)). Whether the resolution in the first proceeding is sufficiently firm to merit preclusive effect turns on a variety of factors:
“To claim the benefit of collateral estop-pel the party relying on the doctrine must show that: (1) the issue at stake is identical to the one involved in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the determination of the issue in the prior litigation must have been ‘a critical and necessary part’ of the judgment in the first action; and (4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding.”
Id. (quoting Pleming v. Universal-Rundle Corp., 142 F.3d 1354, 1359 (11th Cir.1998)). Gawker Media contends that all four prongs have been satisfied and that the federal court’s prior ruling is a final judgment on the merits of the issues presented by the preliminary injunction itself.[9]
This court has not addressed this exact collateral estoppel issue, nor has the Eleventh Circuit Court of Appeals.[10] And though Gawker Media’s arguments are persuasive, we are not convinced that a ruling, at such a provisional stage in the proceedings should have preclusive effect. The United States Court of Appeals for the Federal Circuit held “that decisions granting or denying preliminary injunctions may be sufficiently final to be given preclusive effect,” but the court further held that in order for decisions to have such effect, they must be “based upon a determination that constitutes an ‘insuperable obstacle’ to the plaintiffs success on the merits.” Abbott Labs. v. Andrx Pharm., Inc., 473 F.3d 1196, 1205 (Fed. Cir.2007) (citations omitted). Said “insuperable obstacle” only exists where the prior decision is based on a decisive determination and not on the mere likelihood of success. Id. at 1206. In this case, the federal court did not draw any decisive conclusions on the merits, nor did the federal court even address the likelihood of success thereon; rather, the federal court found that Mr. Bollea was not entitled to injunctive relief at a preliminary stage in the proceedings. See Bollea I, 2012 WL 5509624, at *2-5. And though the federal court’s order is unquestionably persuasive, based on the foregoing, we decline to give it preclusive effect.
V. Conclusion
The circuit court’s order granting Mr. Bollea’s motion for temporary injunction is reversed because it acts as an unconstitutional prior restraint under the First Amendment.
Reversed.
DAVIS, C.J., and ALTENBERND, J., Concur.

. In both the underlying action and in the motion for temporary injunction, Mr. Bollea named Gawker Media, LLC; Heather Clem; Gawker Media Group, Inc.; Gawker Entertainment, LLC; Gawker Technology, LLC; Gawker Sales, LLC; Nick Denton; AJ. Dau-lerio; Kate Bennert; and Blogwire Hungary Szellemi Alkotast Hasznosito KFT as defendants. However, only Gawker Media, LLC, chose to appeal the order; the remaining parties are appellees in this proceeding who have made no formal appearance.

. The circuit court also failed to require Mr. Bollea to post a bond, a very basic and ministerial act. See Fla. R. Civ. P. 1.610(b); see also Fla. High Sch. Activities Ass’n v. Mander ex rel. Mander, 932 So.2d 314, 315-16 (Fla. 2d DCA 2006) (holding that a trial court cannot waive the bond requirement nor can the bond amount be nominal); Cushman & Wakefield, Inc. v. Cozart, 561 So.2d 368, 370 (Fla. 2d DCA 1990) ("A trial court must require the movant to post an injunction bond before it enters a temporary injunction.”). Though the circuit court can determine the appropriate amount of the bond after hearing evidence from both parties, the circuit court is without discretion to determine whether to set bond in the first place. See Bellach v. Huggs of Naples, Inc., 704 So.2d 679, 680 (Fla. 2d DCA 1997).

. The Supreme Court assigns each Justice to a federal circuit. See 28 U.S.C. § 42 (2012). As a Circuit Justice, the Justice is responsible for handling matters arising in cases from state and federal courts within his or her circuit.

. Hulk Hogan with Mark Dagostino, My Life Outside the Ring 187-88, 253 (2009).

. We are hard-pressed to believe that Mr. Bollea truly desired the affair and Sex Tape to remain private or to otherwise be "swept under the rug.” For example, in March 2012, Mr. Bollea called into TMZ Live, a celebrity and entertainment media outlet, and disclosed that he could not identify the woman in the Sex Tape because he had a number of "conquests” during the time it was filmed. Hulk Hogan — I Have NO IDEA Who My Sex Tape Partner Is, TMZ (March 7, 2012, 1:50 PM), http://www.tmz.com/2012/03/07/hulk-hogan-sex-tape-partner-tmz-live. Furthermore, in October 2012, Mr. Bollea appeared on The Howard Stern Show and professed that his good friend, Todd Alan Clem, known professionally as Bubba the Love Sponge, allowed Mr. Bollea to have sex with Mr. Clem’s then-wife Heather Clem. Hulk Hogan — Yes, I Banged Bubba's Wife, TMZ (October 9, 2012, 6:08 AM), http://www.tmz.com/2012/10/09/ hulk-hogan-bubba-thelove-sponge-radio-howard-stem. Mr. Bollea was certainly not shy about disclosing the explicit details of another affair he had while married to Linda Bollea in his autobiography. See My Life Outside the Ring at 187-88.

. We are aware that Gawker Media is likely to profit indirectly from publishing the report with video excerpts to the extent that it increases traffic to Gawker Media’s website. However, this is distinguishable from selling the Sex Tape purely for commercial purposes. Cf. Michaels I, 5 F.Supp.2d 823.

. Mr. Bollea cites to the offense of video voyeurism, section 810.145(2)(a), Florida Statutes (2006), and to the offense of interception and disclosure of electronic communications, section 934.03, Florida Statutes (2006), in support of his contention.

. This opinion should not be construed as making a ruling regarding whether or not the information itself was intercepted unlawfully by Gawker Media’s source.

. Gawker Media cites to numerous published and unpublished opinions from various other courts in support of its contention. See, e.g., Bridal Expo, Inc. v. van Florestein, No. 4:08-cv-03777, 2009 WL 255862 (S.D.Tex. Feb. 3, 2009); Suarez Cestero v. Pagan Rosa, 198 F.Supp.2d 73 (D.P.R.2002); Hayes v. Ridge, 946 F.Supp. 354 (E.D.Pa.1996); Lyon Ford, Inc. v. Ford Mktg. Corp., 337 F.Supp. 691 (E.D.N.Y.1971).

. Mr. Bollea relies heavily on David Vincent, Inc. v. Broward County, Florida, 200 F.3d 1325 (11th Cir.2000), in support of his contention that the litigation of an action for a preliminary injunction does not have preclu-sive effect. However, the Eleventh Circuit, applying Florida collateral estoppel law, actually held that the state court’s denial of a temporary injunction does not preclude plaintiffs from later pursuing a permanent injunction. Id. at 1331.